24-10277 Insurance Marketing Coalition Limited v. Federal Communications Commission, United States of America. And, Mr. King, I see you've reserved time for rebuttal, but you may proceed when you are ready. Thank you, Your Honors. May it please the Court, Kevin King on behalf of Petitioner Insurance Marketing Coalition. Your Honors, this case concerns the meaning of the phrase prior express consent under the Telephone Consumer Protection Act, or TCPA. For decades, this Court and the FCC interpreted that phrase according to its ordinary common law meaning, as permission voluntarily and clearly stated. Is it true that the phrase was interpreted that way or that we've interpreted consent that way? Because if it's the latter, you're 100% right a number of times we've said it. I don't know we've taken the entire phrase prior express or we've dealt with express independent of consent. And does that matter? I think, Your Honor, it is the entire phrase. And I'd point you in particular to Judge Branch, your opinion in Lukoff, to Mize v. Gulf Coast, to other cases where you're working with this phrase and sometimes you're working with one dimension of it and sometimes another, right? You've got Schweitzer and Osorio that deal with rebuttal. But the common law part, we focused on consent. I don't remember us ever using the phrase previous, which wouldn't really matter. But the express part, I think, probably is important here, that that part was done based on the common law or was seen as some sort of special common law meaning. Your Honor, I can't recall a case in which this court has keyed in specifically on the  But I do think, Your Honor, it's implicit in some of the cases where you're talking about, well, what is the scope of consent? And so, for example, you had calls in, this is Mize v. Gulf Coast, that were from a collections agent on behalf of a hospital or some component of a hospital. And so there were questions there. Was it within the scope of consent? Yes, it was, because there, the plaintiff had consented to calls from the hospital's business associates. And so you had to know about scope, and I take scope to be about express. Let's assume for the moment that I think that express adds something there to the common law meaning. What does express mean? Well, I think express is, when I said earlier, clearly and voluntarily stated, it would be clearly, right? And so you get clearly in Schweitzer at page 1276. I have, from Black's Law, clearly and unmistakably communicated. Is that fair? Yes. Okay. I think that is, that's what this court has said. I think that's correct. We have no equivalent at all with that. And so what this court has done across all these cases has said the common law meaning is what Congress incorporated here, and you got that from the Third Circuit. But the regulations then allow Congress, or Congress specifically delegated the authority to implement that. So there, obviously, some regulations allowed. I don't think you dispute that, right? That's correct, Your Honor. Some regulations allowed. But the key word you used there, Your Honor, is implement. So tell me, you argue conflict, they argue implement. Tell me where that disconnect is, because I think that, to me, is the rub of what this case is about. Sure. So statutory authority is the easiest way to go at this case. We have three different arguments, each of which is independently sufficient to warrant vacater. But statutory authority is the straightest line from where we are now to vacater, and so I guess I'll start there. I can tell you only for me, that also is the strongest argument. Understood, Your Honor. So there are two different branches to our statutory authority argument. I want to make sure I get both of them on the table here, if I could. The first is that under Hunt and under Clark, in particular, the Supreme Court has said that the same statutory phrase cannot mean different things. The problem is, though, and I don't want to spend too much time in it, because I think the conflict one is the stronger of the two points, but in those cases, there was actually a definition that was two different meanings. And here, you seem to have two different applications, but I don't see definitions. In other words, there's one definition, and then there's a completely different term that doesn't include written, or that there's a completely different term that's used for these other examples. Right? Well, Your Honor, I don't want to dwell on the point, but I think I do disagree with what you said there, and let me explain why. There is one statutory term, the prior and express consent. That's true. It applies to all calls governed by the TCPA, marketing calls, informational calls alike. But nevertheless, the Federal Communications Commission has two different regulations, one of which applies to marketing calls, and one of which it does not. And those are different regulations. The law is... That is 100% true, but that's not two definitions of the same exact term. It just isn't. I mean, in the same way that Clark is, this word means this, and this word means that. That is a different thing than, we're going to have two regulations, one that applies to this situation, and one that applies to this situation. Well, let me turn then, if I could, Your Honor, to the conflict with the ordinary meaning of prior express consent, which under Loper Wright is what controls here. As Your Honor was saying during the last argument, that term has a meaning, and that meaning is consistent across cases. And yes, it's true, application of that meaning, application of the rule of decision here, Your Honors, can yield different results. But the rule of decision is consistent across cases. And so, what is the rule of decision? What is the point of conflict? The point of conflict is that this Court has said again and again and again, and has said correctly that the common law meaning controls here, that that's what prior express consent means. But the FCC has not cited any authority, zero, showing that at common law or in any cases, that consent must be given on a one-to-one basis, and that it is impossible, categorically impossible, to give consent to more than one party at a time. I'd point you, for example, to the image on page 10 of our reply brief that shows that just as a matter of common sense, it's possible to give consent to two entities in a single transaction. But beyond common sense, this Court's precedent shows... Yeah, we also know from Gorse Motels that you can do it for more than one. Gorse Motels and Lukoff is even better. If you look at page 1302 of Lukoff, Judge Branch, your decision, the consent there was given to four expressly named businesses, Navient and so forth, but also to their affiliates, subsidiaries, and agents, a vast unnamed set of entities. Could the rule require, could the FCC rule require that there be an express opt-in for every single business with which they wanted, with which the lead generators wanted or with which the consenter wanted to be called? I want to make sure I understand your Honor's question correctly, but I believe the answer is yes, so let me restate and see if I've got this right. But yes, absolutely under the statute, a performance marketer or a lead generator can be required to name everyone to whom consent would apply. And could it be that you have to specifically and explicitly, expressly check off exactly the companies you want to be called in advance? Well, that's one way that you could do it, and I guess the disagreement here is, is that the only way you could do it? Well, I don't know that only is... Implement leaves room for more than only. I guess, would that be a non-conflict implementation? That would be my question. I don't think it would, Your Honor, because there are ways where, and again, I'll just refer to the image on page 10 of our reply, where you check a single box, but it says Bank A and Bank B. I mean, that is prior, it is expressed, and it is consent. And it's consent that's even stronger than the consent that was found in Judge Branch in Lukoff to be valid. So I don't see how that couldn't work. And if I'm right about that, then I think the principle underlying prior express consent cannot require the kind of one-to-one relationship that the Commission has demanded. Why doesn't wiggle room for implementation give them the authority to say, yes, it certainly could be that way, but one way that we're going to implement this rule to require express clear, voluntary, meaningful consent is to require it be done one-to-one? Well, they can't require what the statute allows. And as we know from Blukoff and Mice v. Gulf Coast, the statute allows multi-party consent. So they can implement in various ways. And let me just give you some examples, Judge Locke. They could adopt a regulation that codifies the common law requirement of voluntariness, right? The agency could, under its implementation authority, it could adopt exemptions under Section 227b-2. They have authority to do that. They've got statutory authority under Section 503b to bring enforcement action, as they did in Herb Assess, for example. What they don't have statutory authority to do is to rewrite the statute. That's what the Supreme Court said in the Utility Regulatory Group, which is the agency does not have authority to modify or tailor a statute according to... Do you agree that Section 227b-2b, which allows exemptions for calls made for commercial purposes, does not apply to the cell phone calls? The exemptions does not apply. So that Section 227b-2b, which allows, as part of the regulatory authority, to create exemptions for commercial purposes, for calls made for commercial purposes, that that exemption authority does not apply to cell phone calls. I don't believe the parties have briefed that. I'm asking you... I don't know, and I hesitate to speculate. I'd be glad to file a 28J letter on that, Your Honor. But you've got 227b is where that's housed, and you do also have Section 227b-2b. You also have 227a, which is a separate... I guess what I'm asking is the exemption authority... Here's what it fully says, so I don't want to, you know, I don't want to flummox you, but the Commission shall prescribe regulations to implement the requirements of this subsection and implement the requirements of this subsection. The Commission and then subsection b is made by rule or order exempt from the regulations of paragraph 1b of this subsection subject to such conditions as the Commission may prescribe calls that are not made for commercial purposes, or calls that are not made for commercial purposes. But if you look at 1b, 1b only applies to residential telephone calls. It doesn't apply to the cell phone calls, right? I think that's correct, Your Honor. So in other words, the exemption authority wouldn't apply to what we're talking about, which is the calls to somebody's cell phone. Yes, as to that last point, Your Honor, and beyond that, the Commission did not hear in its order invoke the exemption authority. They point that out, page 24, footnote 3 of their brief, so under Chenery, they couldn't rely on it. If I could, I'd like to turn quickly to the APA and First Amendment arguments, just to get those on the table, unless the Court doesn't want to hear about them, starting with APA. So under the APA, the agency has a duty of reasoned decision-making, and as the Supreme Court said in Ohio v. EPA recently, that duty of reasoned decision-making includes a duty to give an explanation, a reasoned response to explain why, when an agency rejects a comment or enters proposals. That didn't happen in Ohio because the agency had just brushed the comments aside, and that is exactly what we have here at pages 15 to 16 of the appendix, footnote 85. The agency rejected IMC's proposal, which would significantly have tightened up the prior express consent requirements in ways that are consistent with the common law, and they just said, we reject it. They don't say why they reject it, they don't give any reasoning, so you have exactly here the same kind of error you had in Ohio v. EPA. You don't need to take it from me, you have Commissioner Symington who emphasized in his dissent that what you have here on the one-to-one is every evidence of arbitrary and capricious decision-making. I see my red light is on. Thank you. You still have four minutes for rebuttal. Mr. Dunn. Good morning, Your Honors. Matthew Dunn, excuse me, for the FCC in the United States. I think I'd like to jump in, if I may, with a question Judge Luck asked. Would it be possible, could the FCC implement a situation, a standard under which consumers must consent one-to-one but have to click a box for each? Well, that wasn't, the one-to-one part wasn't part of my question. It was, could they give, could a lead generator just give a list of here are ten companies, check the ones you want to get robocalled from? Well, that would comply with the existing rule. That is already the rule that the FCC has. How is that possible? That's not one-to-one. That's, you're opting into more than one company at a time. But each, I think each click would be one-to-one, right? So what the FCC is looking for here, and the order explains, is evidence that a consumer is meaningfully consenting or is intentionally consenting. What about, so what about the example in their brief? The example in their brief, as I understand it, is you consent to be called from Bank A and Bank B at any time by robocall. Right, so that example is, with respect, concocted by my friend Mr. King. So it's not in the record. I'm asking. So that would not comply with the rule. So the agency has a bright-line rule, and any time you have a rule, of course, there will be edge cases. A 35-mile-an-hour speed limit, 36 doesn't comply. Not complying with the rule is what I need to know. Okay, so then I have some questions about that. So let me get to what the crux of my concern is, and I want you to be able to address it. Okay. So it seems to me that the statute, in carving out other than a call made for emergency purposes, which doesn't apply here, or made with the prior expressed consent of the called party, is a right by the called party to consent to get commercial calls that it wants to get, or he or she wants to get. Is that a fair understanding of what that statute is? That it gives a consumer a right to consent to calls? Yeah, not a right in the, like, I can go sue for my right. But in other words, it carves out saying... If it's intended to allow that kind of communication, I would certainly conceive that. Right. But in the nearest to the consumer. It's the consumer's right to be able to get that communication if they give consent to do so. That's right. Okay. And I appreciate that we're on the same page on that. If that is the case, then how is it implementing that right to limit the authority to exercise that right? So the rule is doing a lot of work. One of the, it's trying to prevent a serious problem. Wait. So no one here agrees, no one here disagrees with 75 percent of the rule. Okay. Okay. So we're only talking about the definition here and the one-to-one and the relatedness requirement. Right. So my question to you, I want to ask you because to me it is, for my brain and only speaking for me, the crux of what this case is about, which is if I have a right under the statute that Congress has given me to get calls by previous expressed consent, how is implementing that right limiting that right? Well, any implementation that limits the kind of consent would limit the right. I think that's, I think that may be the problem. In other words, implementing is, if it's expressed, it's got to be done in writing. Or if it's expressed, it has to be clearly articulated in some form. It can't be hidden in a link. Like those are ways to implement what's there. But limiting the authority, limiting the right of the consumer to get these things, I'm having trouble understanding how that's an implementation which you are allowed to, and I say you, I think the FCC is allowed to do with things that limit it, which is it would seem maybe not allowed to do and be in conflict. Right. Well, I think that agency does have some work to do in implementation here. So it has to guard, it has to allow consumers to consent to what they want to get. But it also has to guard against limitations, against claims that the consumer has consented where it did not intend to because that's also part of implementation. So the previous regime already required clear and conspicuous notification before someone And I don't think anyone disputed that. In fact, I don't think there was an objection to the 2012 rule, right? Right. That's exactly right. And under that rule, the practice of the lead generation industry was what's described in the record, a checkbox which says marketing partners and thousands of names. And they said, and there's a certain logic to this, well, that's clear and conspicuous if someone clicked the link. So, counsel, if I could stop you. This is what you're telling me now is exactly what's in the brief. And I don't begrudge you that there is a problem that the FCC was trying to address. We're not talking about the arbitrary and capricious part of it. I can only speak for myself that I actually tend to agree with you on that part of it. What we're talking about here is something separate than that. There is a problem. You're allowed to implement something, the statute. But how can you take away somebody's right to consent? How is that consistent with the right that's given in the statute? I think I was giving a roundabout answer, and I apologize for that. Because part of implementation is not just ensuring people can get the calls they want, but also ensuring they don't get the calls that they do not mean to consent to. So some kind of rule... But that's enforcement or punishment for someone doing something against the statute. How is... If a right is given to me, how can you take away that right in justification because some people are abusers? Go after the abusers. Don't go after me because I want as many calls as I want. Let's say I am the rare human being who wants to be... I am so lonely and addled that I want to be interrupted at any time by anyone I want to. Why can't I consent to 10 people calling me in one thing? Any bank that you are affiliated with, I would like for you to give me a call. The good news is you can still do that under the new rule with 10 checkboxes, which is I would submit a pretty small burden to put on one side on the rare case of the person who wants to be deluged with calls. It's a small price to pay to protect the right of people who do not want that to not get calls that they do not want to consent to. I know, but you're taking away my right to consent to multiparty. The reason I use the affiliate, sorry to interrupt. The reason I use the affiliate is because that's gross motels or gorse motels. What they said is any of these people and the affiliates can contact you by fax, and they did. They complained, well, I only signed up for this guy, not all these other guys. The answer was, no, you assigned for affiliates. If you have the ability to consent, if the statute means that, and I don't think there's any dispute that it does, how does the rule not take away my right to do that very thing? Well, so if the agency is going to implement the consent requirement, I think it has to balance, as the findings of the TCPA discuss, balance the right of people to speak or telemarketers to call, or if you like, the right of people to receive those calls on the one hand, and on the other hand, the protection of consumers from things they don't want and consent they did not intend to give. In other words, that's not dealing with the issue of my right to consent. That's dealing with abusers. That's dealing with people who are violating the law. I just don't see how violating the law justifies you taking away the right that's written in the statute of the caller to give expressed consent to whoever and whatever they wish to do. Well, under the old regime, and I'm not just making a policy argument. I think I'm also making a statutory interpretation argument. Under the old regime, there were already enforcement actions and class actions. The Eurocase being an example. Exactly, and the 28th State Attorneys General and all those people that are familiar with this. So enforcement was not sufficient there. So if the agency is going to meaningfully implement a consent requirement, enforcement of bad actors was not enough. People were accidentally consenting, I'll put air quotes around that, to calls they didn't want. So the implementation is some policy work from the agency. It has to fit with the statute, but as long as it's still implementing the consent requirement of balancing those. So I think implementation of the consent requirement necessarily entails both allowing speech and also restricting unwanted speech. And that may be true, but how is it the consent of what it means? In other words, how can you rewrite what you're authorized to do, which is to explicitly require or explicitly allow someone to consent by saying no, you can't do that because we've found some problems out there about this? I don't want to be obtuse. In other words, just because you guys are ineffective in enforcing the authority doesn't mean that you have the right to limit one's rights, statutory rights, or to rewrite those rights to limit what they mean. That's why I'm having trouble understanding that. You identified a problem. I believe you that it's a real problem. You've identified authority to be able to attack that problem, but I don't see how you can use the consent part of this to get to that. There are other things that you could do. You can hire more lawyers. You can prosecute more cases. You can investigate further. But instead, what it seems to have done is this allows us consent part. Consent is this big circle. We're only going to allow a piece of that circle. How is that allowed? How is that implementation? I think because what the agency is trying to protect against is people who do not intend to consent. That's how this restriction comes into play. I know, but how does a bad actor affect my right to consent? I understand what you're saying. I get you're trying to protect people. I don't doubt that at all. Related to their consent specifically. The reason we're protecting them is not just that it's a nice thing to do, but that the record showed those people did not intend to consent. So it's still both halves of this equation that we're trying to balance both have to do with consent. Consenting to calls you want and protecting against consenting to calls you don't. Okay, so let's speak law now. Tell me what... Give me a case, the best one you have from either us or the Supreme Court that allows you to read implementation to be a restriction of one's right and a limitation of one's right on the clear meaning of what that right is. So if the right is a caller to prior express consent, show me a case which allows implementation to mean that you can restrict that statutory right. Okay, I don't... Because this wasn't briefed in this way, I don't have a case... I'm not sure it was. I think it was briefed in this way. This is the conflict argument. This is exactly the conflict argument. I guess I'm hinging on the word implementation, but what I would say is... Well, of course, because the only authority you have to do anything is by... I'll read it to you. The commission shall prescribe regulations to implement the requirements of the subsection. Right. And the requirements of the subsection of the commission shall consider prescribing regulations to allow businesses to avoid calls made using an artificial or pre-recorded voice to which they have not been given their prior express consent. Right. So certainly we agree with that. But the... A regime in which no right is restricted, in which someone can consent to... in any way that they want... No, not in any way they want. In any way the statute specifically gives me the right to do. Right, but okay. So a regime under which... I guess what I mean is implementation is necessarily going to characterize or is going to restrict in some way by chance. I don't see why that's true. So express requires... So I've thought about that and I understand the appeal of that argument. But express has a meaning. It means, and we said it before, I'll make sure to repeat it again so that we're all on the same page, clear and unmistakably communicated. Right. You certainly can require things that require that it be expressly done in a clear and unmistakably communicated manner. Right. But what you can't do is require it where it's... where it's any more than clear and unmistakable that you won't even allow me to do it. So like in the relatedness context. You're telling me in the mortgage, if I sign up for a mortgage and they ask, here are the three mortgage companies and you check and here's a home repair business that wants to call you too, I'm not even allowed to check that box. Clearly and unmistakably. Well, that's true. But again... I know it's true. That's why I'm asking you about it. Very good. So, but the record was showing that people were not meaning to consent to this. So this is a small restriction on people that want to consent. I know, but there are people who do want it. I'm talking about me, my addled self, who wants to... I clearly and unmistakably want that thing. You will not allow... You, the FCC. The FCC will not allow me to do that. For robocalls. So there's still a million ways that... I understand. But the statute... Without the regulation, you agree with me, the statute would allow it. Oh, yeah, absolutely. That's the problem. If the regulation doesn't allow me to do what the statute allows me to do, then it's not an implementation. It's a restriction, right? I guess I would say, what is the... Not to... No, no, go ahead. But what is the role for implementation if it simply parrots the language of the statute? Not parrots. It could absolutely do things that impose it. It can be... Okay. It could be... Clearly and unmistakably, it has to be done on the page itself. It has to be, in other words, not a link somewhere, but on the page itself. It has to be in language that the average person would understand. Those are all things that can implement clear and unmistakable. I see, but they're also restricting... In other words, what y'all did from 2012 until 2023. What I was going to say is those are all, and it could be characterized as restrictions on people's... I don't... Unless your obvious point is that those fall within express, perhaps. That's right. That's implementing what express means. So I still think that it is an implementation of express. Voluntary. Voluntary has to require... Because it has to be actually voluntarily done. It has to be done by someone who's competent to do so. Regulation would said to make sure you have to be someone who's over this particular age. In other words, the age of competency. Those are all implementing things. So I take... Return to the example that we began with in which one must simply put a checkmark next to ten names. I would analogize this to a contract that we've all seen, a complex contract where you have to put initials next to certain provisions. That is express... That is an implementation of express consent. It's showing, I've read this and this is what I mean to do. The same function is solved by ten checkboxes. So it is still... I would submit to you still an implementation of express consent in that way. But that's... You're talking about there for the one-to-one consent. That's right. You're saying that in the logically and topically related requirement that if you're going in for an auto loan, you can't also then say, check a box. I want information from this bank about loan consolidation or I want information from this bank about home loans. You've restricted the consumer's ability to move outside of the logically and topically related. Correct? That is true for robocalls specifically. So that's... That's the crux I think of what Judge Luck is saying is that you, instead of saying I'm going to regulate how the corporate entities who are out there selling a product operate in getting express consent, you've now said to the consumer, so many of you didn't know what you were doing since 2012 that we're just not going to let you do that anymore. And how have you not then moved out of implementation? I think the record... I think we do have to look at the way the industry was operating that required this rule. Don't you have to look at what the statute says? Absolutely. But again, I think if we see that consumers under the old system are repeatedly giving consent that they didn't mean to give or it was not sufficiently expressed, if you like, then rules which... then that calls for new rules. You came up with a categorical rule and we've talked about the Gorse case, but we also have the Schweitzer v. Community Bank case where we have said that consent depends heavily upon the implications and the interpretation of the circumstances. Here you've said we're going to move you into a completely different area and we're just going to impose categorical restrictions. I think I would characterize the topically and logically related requirement as also consent based because if someone goes to a website about home repair, it's reasonable to assume that they're looking for information about home repair and are willing to receive robocalls about that. It's very unlikely they're intending to get calls about medical products or loan consolidation or anything else. How do you know that? I mean, if they've checked a box that says they want it, they go, oh my gosh, one-stop shopping. All of my answers, all of my questions have been answered. I'm so lucky. Oh, the FCC won't let me do one-stop shopping. So, I think, again, I would return to the idea that implementation of the consent requirement is going to require some policy expertise from the agency and if they're looking at a record and saying, we have a serious problem here, we need to make, we need higher evidence of consent. Perhaps, perhaps, the question should be we have a big problem here. We need to talk to Congress about it. Congress did task the agency with implementing this consent requirement. It's given you power to implement. It has not given you carte blanche.  Absolutely,  This has to still be related to expression. Correct. And that's where we may disagree. But, you have exceeded your time. Thank you. And Mr. King, you have four minutes. Thank you, Your Honors. If I could just go quickly to show that revocation of the consumer's right to consent. There's a very specific manifestation of that in the order. If you look at footnote 93 on page appendix 17, what it says there is that a consumer cannot consent to the loan consolidation on an auto loan website. So the commission was expressed that this is what they're doing. That's first. Second, we, Counselor, I will just say that it is, this implementation thing is a fine line. And, I'm just interested in, and one thing that I think is not as fleshed out in the briefing as I'd like is that line between what is implementation and what is conflict. Because there is room for the FCC to regulate here. We have to be clear, they have the power to regulate here and they have the power to do some stuff. What I just want to know is when that power leaves and when it becomes contrary to what the statute authorizes.  yes, we agree. The FCC has authority here to implement and that means that. What is the best case that describes that issue? Between what is implementation and what is contrary to law? Well, certainly you start with Loeb or I don't have a case off the top of my head but I will say you mentioned some examples during my colleague's  We agree that the FCC could do those examples. For example, a competency requirement, a requirement that the consent be phrased in terms that the average person can understand. All of those things are consistent with the civil case, right? There's civil cases here that, you know what, this is written in gibberish. An ordinary person couldn't understand it. That, a court could reach that conclusion without regulation. So that,  is the scope of implementation and as I think as we just saw, the FCC has gone beyond that scope here. There seems to be some zone beyond just the text of the statute that allows implementation. Even your proposed alternative rule goes probably outside of what would be just within what it could be previous express consent. I think you would agree with that, wouldn't you? Yes. I mean, what we're trying to do in our proposal is to actually take the common law. Common law is complex. It has many dimensions and you can't just copy and paste the statute. You've got to be able to do more than that. But what you're doing needs to not prohibit what the  allows. And I think that fundamentally is the problem here. The agency has added to the statute. I do want to point out that the statute, I'm sorry, the regulation already requires clear and conspicuous disclosure. That's in F9. And then, I guess, finally, I want to point out a timing point here, Your Honors, which is that this regulation has a compliance deadline of January 27, 2025. Do the    You're not, Your Honors. Now you've heard full briefing. You had a full consideration of the record and all the circumstances. We'd encourage you, if you're inclined to do that, or if not, if, you know, consistent with the court's resources and schedule, to try and get an opinion out in time so that the court can decide what to do with the case. And we would encourage you to also ask the court to    and for the    Thank you. Thank you both. We have the case under submission. Thank you. Thank you.